**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**TRESIA EASTERLY, on behalf of herself and others similarly situated,**

                                 **Plaintiff,**

                   - *against* -

**TRI-STAR TRANSPORT CORP. CHRISTOPHER JACQUES, and JILL C. JACQUES, Individually,**

                                 **Defendants.**

---

**11 Civ. 6365(VB)(PED)**


**REPORT AND**
**RECOMMENDATION**

**TO:   THE HONORABLE VINCENT L. BRICCETTI,**
        **UNITED STATES DISTRICT JUDGE**

**I.      INTRODUCTION**

On September 12, 2011, Plaintiff Tresia Easterly ("Plaintiff") commenced the instant action against Tri-Star Transport ("Tri-Star" or "Defendant"). Dkt. No. 1. Tri-Star is a corporation with an office at 29 Bloomingburg Road in Middletown, New York. See Dkt. No. 19 (First Amended Complaint, dated Feb. 1, 2013 ("AC")) ¶ 14. Tri-Star is a school bus operator providing school bus transportation services within the State of New York. Id. ¶ 13. Plaintiff is a resident of Sullivan County in the State of New York and was employed by Defendant as a School Bus Driver. Id. ¶¶ 38-39.

The complaint asserts claims for unpaid minimum and overtime wages and unlawful retaliation pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), id. ¶¶ 88-105, 123-140, spread of hour wages pursuant to NYLL, id. ¶¶ 106-09, liquidated damages, AC Prayer For Relief ¶ e, breach of contract, AC ¶¶ 110-122, prejudgment

interest, AC Prayer For Relief ¶ i, and attorneys' fees and costs, id. ¶¶ g-h.  The complaint alleges that Defendant's violations of the FLSA and NYLL were willful.  AC ¶¶ 90, 94-95, 130.

For nearly two years, Defendants appeared through counsel, whose active participation in the case included discovery and a settlement conference.  See, e.g., Dkt. Nos. 13, 20, Minute Entry, Aug. 2, 2013.  On April 1, 2014, the Court granted Plaintiff's motion for a judgment of default against Tri-Star, see Dkt. No. 47, after Defendants' counsel withdrew, see Minute Entry, Mar. 29, 2013; Dkt. No. 32, and referred the case to me for an inquest into damages.  See Dkt. No. 49.

For the reasons that follow, I recommend that the Court enter judgment against Defendant in the amount of $47,791.30 in damages, as apportioned below, along with prejudgment interest of $1,188.18 up to November 19, 2014 and at a daily rate of $0.82 thereafter, and $53,390.00 in attorneys' fees and costs.

## II.     DISCUSSION

### A.     Applicable Law

#### 1.     Statute of Limitations

The applicable statutes of limitations are six years under the NYLL, two years under the FLSA, and six years under contract law.  See NYLL § 663(3); 29 U.S.C. § 255(a); N.Y. C.P.L.R. § 213(2).  However, if an employer's acts are found to be "willful," the statute of limitations under the FLSA increases to three years.  29 U.S.C. § 255(a).

### 2.      Federal and State Labor Laws

#### a)      Unpaid Minimum Wages

Federal and state law require employers to pay at least a minimum hourly rate to employees for every hour they work.  See 29 U.S.C. § 206(a); 12 NYCRR § 146–1.2.  During Plaintiff's employment from March 21, 2010 through August 14, 2011, the federal and New York State minimum hourly wage was $7.25.  See id.; see also 12 NYCRR § 146–1.2.

#### b)      Unpaid Overtime Wages

Federal and state law require that employers pay employees one and one-half times their regular rate for any time more than 40 hours that they work in a given week.  29 U.S.C. § 207(a); 12 NYCRR § 146–1.4; see also Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009).

#### c)      Liquidated Damages

Under the FLSA, a plaintiff who is owed minimum or overtime wages may recover an equal amount as liquidated damages.  29 U.S.C. § 216(b).  The NYLL also authorizes liquidated damages where an employer's violations were willful, an allegation which the Court deems admitted given the default.  See Angamarca v. Pita Grill 7 Inc., No. 11 CIV. 7777 JGK JLC, 2012 WL 3578781, at *8 (S.D.N.Y. Aug. 2, 2012); NYLL §§ 198(l-a), 663(1).  As of April 9, 2011, these state damages are set at 100 percent of unpaid wages.  See NYLL § 663(1); 2010 N.Y. Sess. Laws, ch. 564 (S.8380) (McKinney).

#### d)      Spread of Hours Violation

Under New York law, employees are also entitled to receive "spread of hours" compensation.  This requires "one additional hour of pay at the basic minimum hourly rate" for

3

any workday that lasts longer than ten hours.  12 NYCRR § 146–1.6(a).  "The additional hour of pay is not a payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay."  12 NYCRR § 146–1.6(e).  If an employee establishes that each workday lasted in excess of ten hours, she is entitled under New York law to a spread of hours premium for each workday worked at the minimum wage rate.  See, e.g., Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CIV. 3725 DC, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) at *3.

### e)      Retaliation

The FLSA anti-retaliation provision provides that it is unlawful "to discharge or in any other manner discriminate against any employee" who "filed any complaint or instituted or caused to be instituted any proceeding" related to the labor laws.  29 U.S.C. § 215(a)(3).

New York Labor Law "prohibit[s] employers from discharg[ing], penaliz[ing], or in any other manner discriminat[ing] against any employee because such employee has made a complaint to his employer."  NYLL § 215(1).  To state a claim for unlawful retaliation in New York, a plaintiff must adequately plead that while employed by the defendant . . . she made a complaint about the employer's violation of New York Labor Law and was terminated . . . as a result."  Higueros v. New York State Catholic Health Plan, Inc., 526 F.Supp.2d 342, 347 (E.D.N.Y.2007).  An informal complaint suffices.  See Yu G. Ke v. Saigon Grill, Inc., 07 Civ. 2329, 2008 WL 5337230 at *17 (S.D.N.Y. Oct. 21, 2008) (the law "covers complaints by employees to their employer and not merely the institution of formal proceedings.").

### 3.    Breach of Contract

To establish a <u>prima facie</u> case for breach of contract, a plaintiff must prove (i) the existence of a contract; (ii) performance of the contract by one party; (iii) breach of the contract by the other party; and (iv) damages suffered as a result of the breach.  <u>Calgon Carbon Corp. v. WDF, Inc.</u>, 700 F.Supp.2d 408, 414 (S.D.N.Y.2010).

### 4.    Prejudgment Interest

Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest.  <u>See</u> <u>Pavia v. Around The Clock Grocery, Inc.</u>, No. 03 CV 6465 ERK, 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005).  Courts ordinarily apply a statutory interest rate of nine percent per annum in determining prejudgment interest under New York law.  N.Y. C.P.L.R. § 5004.

Section 5001(b) sets forth two methods of calculating prejudgment interest.  First, interest may be calculated from "the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. § 5001(b).  However, "[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.  <u>Id.</u>  Courts have "wide discretion in determining a reasonable date from which to award prejudgment interest."  <u>Conway v. Icahn & Co.</u>, 16 F.3d 504, 512 (2d Cir.1994).

### 5.    Attorneys' Fees

Plaintiff also seeks attorneys' fees and costs pursuant to 29 U.S.C. § 216 and NYLL § 663.  AC Prayer for Relief ¶ h; Krakower Decl. ¶ 10-11.  Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of . . . a reasonable attorneys' fee to be paid by the defendant."

29 U.S.C. § 216(b).  "Both the FLSA and NYLL are fee-shifting statutes entitling [Plaintiffs] to recover . . . reasonable attorneys' fees and costs."  <u>Gurung</u>, 2012 WL 691532, at *10; see 29 U.S.C. § 216(b); NYLL § 198(1–a).

To calculate the "reasonable amount of attorneys' fees" owed, "[b]oth [the Second Circuit] and the Supreme Court have held that the lodestar-the product of a reasonable hourly rate and the reasonable number of hours required by the case-creates a 'presumptively reasonable fee.'"  <u>Gurung</u>, 2012 WL 691532, at *9 (citing <u>Millea v. MetroNorth R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011)).  The lodestar amount is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation.  See <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008).

### a)      Reasonable Hourly Rate

District courts have broad discretion to determine a fee award.  See <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983).  To assess the reasonable rate, the Court considers the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Gierlineer v. Gleason</u>, 160 F.3d 858, 882 (2d Cir.1998) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).

A reasonable hourly rate is the rate a "paying client would be willing to pay," bearing in mind that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  <u>Arbor Hill</u>, 522 F.3d at 190.  The Court uses the "hourly rates employed in the district in which the reviewing court sits," which in this case is the Southern District of New York.  See <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 226, 232 (2d Cir.1987).

b)      **Reasonable Hours Expended**

"After determining the appropriate hourly billing rate, the court calculates the hours reasonably expended." Hirsch v. Sweet N Sour Corp., No. 10 Civ. 5605(JSR)(JLC), 2011 WL 3741008, at *5 (S.D.N.Y. Aug. 25, 2011).  The Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir.1994).  The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  The Court should examine contemporaneous time records that identify the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir.1997).

6.      **Default**

It is well-settled that in light of Defendant's default, the Court is required to accept all of Plaintiff's allegations as true, except for those pertaining to damages.  See, e.g., Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).  In order to ascertain the amount of damages, the court must conduct an inquiry sufficient to establish them to a "reasonable certainty," Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and documentary evidence can suffice in lieu of an evidentiary hearing.  Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).  Proof of damages must be based upon admissible, authenticated evidence.  House v. Kent Worldwide Machine Works, Inc., 359 Fed. Appx. 206 (2d Cir. 2010).

B.      **The Inquest**

On April 2, 2014, I issued a scheduling order, Dkt. No. 48 ("Scheduling Order"), directing Plaintiff to file and serve proposed findings of fact and proposed conclusions of law or

7

an inquest memorandum, and directing Defendant, thereafter, to file and serve a response

thereto.  The Scheduling Order further provided:

> The Court hereby notifies the parties that it may conduct this inquest based solely upon
> the written submissions of the parties.  See Fustok v. ContiCommodity Servs., Inc., 873
> F.2d 38, 40 (2d Cir. 1989).  To the extent that any party seeks an evidentiary hearing on
> the issue of damages, such party must set forth in its submissions the reason why the
> inquest should not be conducted based upon the written submissions alone, including a
> description of what witnesses would be called to testify at a hearing and the nature of the
> evidence that would be submitted.

Id.  No party sought an evidentiary hearing.  After three extensions, Dkt. Nos. 50-51, 53,

on July 11, 2014, Plaintiff filed as part of its inquest submission a Statement of Damages,

including (1) Proposed Findings of Fact; (2) Affidavit Declaration of Plaintiff; (3) Declaration of

[Plaintiff's Counsel Todd] Krakower; (4) three Exhibits to Declaration of Plaintiff; and (5) Text

of Proposed Order.  Dkt. No. 54.  Defendants did not file opposition papers.

On July 30, 2014, this Court informed Mr. Krakower that "it is apparent that plaintiff's

submission does not include evidence sufficient to establish, with reasonable certainty, the basis

of the award she seeks," because, for example, "although plaintiff asserts in conclusory terms

that she did not receive overtime and minimum wage compensation to which she was entitled,

plaintiff's submission does not indicate the total number of hours plaintiff worked in any given

week, nor does it state how much she was actually paid for any week."  Dkt. No. 55.

Additionally, the Court informed Plaintiff that its submission lacked any explanation of how its

claims were calculated and how the Court can assess the reasonableness of the Plaintiff's request

for attorneys' fees.  Id.  After an extension, Dkt. No. 56, Plaintiff filed a Statement of Damages

on September 15, 2014 including (1) Plaintiff's Attorney's Declaration in Further Support of

Plaintiff's Inquest on Damages and (2) Plaintiff's Declaration in Further Support of Damages,

including an exhibit with damages calculations.  Dkt. No. 57.

### C.   Recommendations as to Damages

Defendant's default constitutes an admission of liability, and I conclude that the documentary evidence submitted by Plaintiff provides a sufficient basis from which the Court can reasonably ascertain the following damages and other relief.

### 1.      Statutes of Limitations

Plaintiff brings her claims pursuant to NYLL and the FLSA as well as common law contract.  Here, as Plaintiff alleges that Defendant committed FLSA violations willfully, AC ¶¶ 90, 94-95, 130, which the Court accepts as true by virtue of Defendant's default, the three-year federal period applies.  See, e.g., Angamarca v. Pita Grill 7 Inc., No. 11 CIV. 7777 JGK JLC, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012); see also Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, No. 12-CV-5737 ILG JMA, 2014 WL 4954629, at *4 (E.D.N.Y. Oct. 2, 2014) (citing Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir.2009)) ("Willfulness . . . found where an employer knowingly disregards its obligations under the FLSA.").  Accordingly, since the Complaint was filed on September 12, 2011, Plaintiff may recover damages arising out of employment going back six years under state law and contract law, or September 12, 2005 onward, and three years under federal law, or from September 12, 2008 onward.  All of Plaintiff's claims arise from March 21, 2010 through August 14, 2011, and are therefore all within the applicable statute of limitations periods.

### 2.      Federal and State Labor Laws

### a)      Unpaid Minimum Wages

The Court has assessed the Defendant's minimum wage liability by calculating the difference between the minimum wage and the Plaintiff's actual hourly rate.  The Court calculated Plaintiff's actual hourly rate by dividing the product of the hours she was paid and her

hourly rate by the hours she worked.  For purposes of this calculation, the Court considers the hours Plaintiff worked to be the hours she spent driving her bus route, as reflected by her submission of "hours paid," plus the hours she worked in excess of contract time, as reflected by her submission "additional unpaid hours," which includes time Plaintiff spent shuttling employees and busses between Defendant's three locations.  See Krakower Further Decl., Ex. A; Easterly Decl. ¶¶ 33-35.  Plaintiff's unpaid contract time, infra, is not relevant for the FLSA minimum wage calculation because, although Plaintiff is entitled for compensation for those hours, they do not constitute hours that she was actually working.  See Moon v. Kwon, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002) (classifying time not engaged, and therefore not spent predominately for the employer's benefit, as non-compensable time under the FLSA) (Lynch, J.).

For all but two weeks of her employment, Plaintiff was paid above minimum wage, at rates between $8.625 and $12.123 per hour.  However, Plaintiff was wholly uncompensated for her work the week of June 26, 2011 and is therefore owed $29.00 for the four hours she worked that week.  Additionally, Plaintiff was only compensated at $5.40 per hour, or $1.85 less than minimum wage, the week of July 3, 2011.  Plaintiff worked 37.5 hours that week, including the 15 hours for which she was paid and 22.5 additional unpaid hours, and is therefore owed $69.38 to account for the minimum wage violation that week.  See Krakower Further Decl., Ex. A.

Therefore, Plaintiff should be awarded $98.38 for minimum wage violations.

**b)      Unpaid Overtime**

Plaintiff claims that Defendant failed to pay her required overtime.  See AC ¶ 104.  The money owed to Plaintiff for overtime violations is the product of overtime hours not paid, which includes the unpaid overtime hours claimed by Plaintiff less Plaintiff's claimed unpaid contract

time (which does not count toward FLSA calculations, infra), and plaintiff's overtime rate. At one and one half times her regular hourly rate, Plaintiff's overtime rate was $17.25 from the start of her employment through the week of February 6, 2011, and $20.25 from the week of February 13, 2011 through the end of her employment. See Easterly Decl. ¶¶ 5-6.

Plaintiff is owed overtime payments for the weeks of July 10, July 17, July 24, and July 31, 2011. Plaintiff's conclusory assertion that she was not paid for fifteen overtime hours each of the weeks of August 7, 2011 and August 14, 2011 is not supported by the evidence. Whereas Plaintiff's other claims for overtime relief in July are supported by claims of working an additional forty hours each week (as reflected by Plaintiff's claimed "hours paid" and "additional unpaid hours"), Plaintiff only claims to have worked 25 hours beyond her claimed overtime hours in the weeks of August 7 and August 14, 2011 (specifically, 21 hours for which she was paid and 4 additional unpaid hours), and therefore Plaintiff does not meet the forty hour threshold that would entitle her to overtime compensation for those weeks. Therefore, Plaintiff is owed $187.31, $290.18, $209.18, and $292.01 for each of the weeks in July for which she seeks overtime payment, respectively. See Krakower Further Decl., Ex. A. In total, Plaintiff should be awarded $978.68 for overtime violations.

### c)   Liquidated Damages

Most Courts in this Circuit have concluded that prevailing Plaintiffs may receive liquidated damages under both the FLSA and the NYLL on the theory that the awards serve different functions. Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12–CV–4380 (FB)(RML), 2013 WL 6579799, at *6 (E.D.N.Y. Dec. 16, 2013) ("[M]ajority view is that prevailing plaintiffs may recover liquidated damages under both the FLSA and the NYLL.").

But see Greathouse v. JHS Sec., Inc., No. 11–CV–7845 (PAE)(GWG), 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) (declining to award both because liquidated damages under the two statutes compensate the same harm), Report and Recommendation, adopted as modified, 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012).  Adhering to that majority view, I recommend that Plaintiff be awarded liquidated damages under both federal and New York law based on her recovery for unpaid wages.

Plaintiff is entitled to receive federal liquidated damages of 100 percent of her uncompensated wages.  As calculated above, Plaintiff is owed $98.38 in minimum wage violations and $978.68 in unpaid overtime pay, or a total of $1,077.06 in FLSA violations.  Therefore, Plaintiff is owed $1,077.06 in FLSA liquidated damages.

Additionally, Plaintiff is entitled to receive liquidated damages under NYLL at 100 percent of the total wages owed, as Plaintiff's state claims all arose after April 9, 2011 when New York amended its Labor Law statute to provide one hundred percent of the underpayments in liquidated damages.  See NYLL § 198 (1-a), 663(1).  See Quintanilla v. Suffolk Paving Corp., No. 09 CV 5331, 2012 WL 4086805, at *3 (E.D.N.Y. Sept. 17, 2012).  Thus, Plaintiff is entitled to one hundred percent liquidated damages under state law for minimum wage violations, overtime violations, lost wages, and spread of hours violations.  As calculated above, Plaintiff is owed $98.38 in minimum wage violations, $978.68 in overtime violations, $20,083.06 in lost wages, and $29.00 for spread of hours violations, or a total of $22,189.12.  Therefore, Plaintiff is owed $22,189.12 in NYLL liquidated damages for those claims.

**d)      Spread of Hours**

Plaintiff fails to identify the number of hours she worked in any given day, but rather submits the total number of hours she worked each week.  Therefore, the Court's spread of hours award reflects an award only for each week in which it is a mathematical certainty that she worked more than ten hours in a workday.  The Court assumes that Plaintiff worked a standard work week of five days per week, as Plaintiff's contract guarantees payment "every day unless a school is closed."  See Easterly Decl., Ex. 11 at 6.  Therefore, Plaintiff is owed one spread of hour of additional pay at $7.25 per hour for each week in which she worked more than fifty hours, as Plaintiff necessarily worked for longer than ten hours for at least one day that week.  Plaintiff is therefore awarded $7.25 for each of the weeks of July 10, July 17, July 24, and July 31, 2011, in which she worked between 57.25 and 62.42 hours, for a total of $29.00.

**e)      Retaliation**

**(1)      Retaliation under the FLSA**

Plaintiff states that Defendant violated the anti-retaliation provision of the FLSA when Defendant subjected her to "adverse employment actions including, but not limited to verbal warnings, written warnings, and, ultimately termination" due to her "complaints concerning her failure to be properly compensated . . . ."  AC ¶¶ 124-25.  Plaintiff specifically alleges that she "engaged in the protected activity of complaining to her employer regarding issues of overtime and other owed compensation."  Id. ¶ 127 (emphasis added); Easterly Decl. ¶¶ 105-09.

Courts in this Circuit have recently considered whether complaints to one's employer are considered protected under the FLSA's anti-retaliation provision.

Prior to [Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011)], the Second Circuit held that the FLSA anti-retaliation provision only protects the filing of

formal, written complaints "but does not encompass complaints made to a supervisor." Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir.1993). In 2011, in Kasten, the Supreme Court considered the narrow issue of whether the FLSA anti-retaliation provision covers oral complaints. The Supreme Court held that "oral as well as written complaints" about FLSA violations to the government are protected under the anti-retaliation provision's term "filed any complaint." Kasten, 131 S.Ct. at 1329. The Court noted that while a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it ... as an assertion of rights protected by the statute and a call for their protection," such a requirement "does not necessarily mean that notice must be in writing." Id. at 1335. Of significance, the Supreme Court "state[d] no view" on the merits of the appellee's alternative argument that internal complaints to an employer do not fall within the ambit of protection under the FLSA because the appellee failed to raise the issue in response to the appellant's petition for certiori. Id. at 1336.

Since Kasten, the Second Circuit has not revisited the issue of whether an internal complaint to an employer is protected by the FLSA anti-retaliation provision. Virtually every district court case in this circuit that has considered the issue, however, has concluded that Kasten only abrogated Lambert to a limited extent, and that the Second Circuit's holding that internal complaints to an employer are not protected by the FLSA remains controlling law in the circuit.

Eschmann v. White Plains Crane Serv., Inc., No. 11-CV-5881 KAM VVP, 2014 WL 1224247, at *11 (E.D.N.Y. Mar. 24, 2014) (collecting cases).

The Court follows the weight of authority in this Circuit that Lambert remains binding precedent on this issue. Because Plaintiff only claims to have complained "to her employer" and not to any government agency or anyone aside from her employers, Plaintiff's retaliation claims brought pursuant to the FLSA cannot succeed as a matter of law. AC ¶ 127.

### (2)      Retaliation under the New York Labor Law

Although Plaintiff's complaining to her employer is not "protected activity" under the FLSA, her complaints are covered by the New York Labor Law.

Here, Plaintiff alleges that she was terminated as a result of her complaints to her employers about her inadequate compensation. AC ¶¶ 133 -34. Plaintiff's testimony supports her allegations. See Easterly Decl. ¶¶ 105-115; see also Pl.'s Proposed Findings of Fact in

14

Support of Pl.'s Inquest on Damages ¶¶ 13-19.  Plaintiff satisfies Labor Law § 215 because she alleged and presented evidence of:  (1) informal complaints, (2) adverse employment action (termination), and (3) that her complaint resulted in the adverse employment action.

Accordingly, Plaintiff is entitled to retaliation damages pursuant to New York Labor Law § 215 in the amount of $20,083.06.[1]

**3.      Breach of Contract**

Plaintiff has alleged facts supporting a common law breach of contract claim.  The contract at issue is established through Route Assignment Sheets, Route Adjustment Forms, and the Tri-Star Transport 2010-2011 School Bus Driver and Monitor Policies & Procedures ("Employee Handbook").  See AC ¶ 71.  As a school bus driver, Plaintiff drove specified routes for Tri-Star, and Tri-Star agreed to pay Plaintiff for a minimum number of hours for each route. See id. ¶ 71

The Tri-Star Employee Handbook states that employees are "paid for the entire route every day unless a school is closed.  This works to the employee's benefit, for example if you are on a route that has four students and only one goes, you are still paid as if all four students went." See Employee Handbook, 6-7.[2]

---

[1]      While employed by Defendant, Plaintiff made an average of $282.86 per week.  See Pl. Proposed Findings of Fact in Support of Pl.'s Inquest on Damages, ¶¶ 17-18, Ex. A.  As a result of Defendant's unlawful retaliation against Plaintiff, Plaintiff was unemployed for 71 weeks.  Id. ¶ 16.

[2]      Plaintiff's contention that she is entitled to actual time worked beyond the scheduled route time appears to contradict language in the contractual documents stating she is entitled to route time only.  See Easterly Decl., Ex. 1-3 ("A route is paid by 'route time' only.")  Given Defendant's default, I do not consider whether that limitation is enforceable.

15

Plaintiff claims that Defendant failed to compensate her for the guaranteed minimum number of hours she was to be compensated for each route, as established by the Route Assignment Sheets and the Company handbook.  See Easterly Decl. ¶¶ 14-15, 29.  This failure to pay constitutes a breach of contract.  Defendant's default constitutes an admission of liability as to these claims.  See Fed.R.Civ.P. 8(b)(6); see also Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009).

Plaintiff claims that she was denied payment for four hours of contract time at her hourly rate ($11.50 for the weeks of March 21, 2010 through February 6, 2011, and $13.50 for the weeks of February 13, 2011 through her termination on August 14, 2011) for nearly every week she worked.  See Easterly Decl. ¶¶ 37-104.  In total, Plaintiff should be awarded $3,336 for her unpaid contract time at her hourly rate.

### 4.    Prejudgment Interest

Plaintiff seeks prejudgment interest on her breach of contract claim.  See Proposed Findings of Fact in Support of Plaintiff's Inquest on Damages ¶ 10; see also Memorandum of Law in Support of Inquest on Damages, 2.  The Court finds the midway point between when "plaintiff[s] began and ceased working for defendant[s]" as a "reasonable intermediate date" for purposes of calculating prejudgment interest.  Pavia, 2005 WL 4655383, at *8.  Accordingly, the intermediate date by which this Court will calculate prejudgment interest is December 1, 2010 (midway between March 21, 2010 and August 14, 2011).  Plaintiff is thus entitled to 9 percent prejudgment interest under N.Y. C.P.L.R. § 5001 on her unpaid contract time.  Interest should be

awarded to Plaintiff in the amount of $1,188.18 up to November 19, 2014 and at a daily rate of $0.82 thereafter.[3]

### 5.    Attorneys' Fees

#### a)    Reasonable Hourly Rate

Courts in this District have determined that between $250 and $450 is an appropriate fee for experienced civil rights and employment litigators. See, e.g., Allende v. Unitech Design, Inc., 783 F.Supp.2d 509, 514–15 (S.D.N.Y.2011) (approving rates of $450 for law firm partners in FLSA cases); Wong v. Hunda Glass Corp., No. 09 Civ. 4402(RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept.1, 2010) (awarding $350 per hour).  Plaintiff is represented by Todd Krakower, a member of Krakower DiChiara LLC and an employment lawyer for twenty years. (See Krakower Decl. ¶¶ 1, 5).  Although Plaintiff was recently awarded $450 for a difficult class

---

[3]      Nine percent per annum is .02465 percent per day.  On $3,336 of unpaid contract time, interest is $0.82 per day.  There were 1,449 days between December 1, 2010 and November 19, 2014.  Interest therefore is $1,188.18.  See Pac. Westeel, Inc. v. D & R Installation, No. 01CIV.0293(RLC)(AJP), 2003 WL 22359512, at *4 n.5 (S.D.N.Y. Oct. 17, 2003).  In her complaint, Plaintiff requested "pre-judgment and post-judgment interest, as provided by law;" AC Prayer for Relief ¶ i, but in her inquest submissions she has requested interest as to her contract claim only.  See Proposed Findings of Fact in Support of Plaintiff's Inquest on Damages ¶ 10; see also Memorandum of Law in Support of Inquest on Damages, 2.  To the extent Plaintiff's Amended Complaint encompasses a request for prejudgment interest on her FLSA and NYLL claims, the Court finds these claims to be waived and considers only Plaintiff's request for prejudgment interest on the breach of contract claim.

Furthermore, Plaintiff limited her interest demand to August 19, 2011- July 1, 2014, or the 1,047 day period between Plaintiff's termination and the date on which Plaintiff originally filed the documents in support of her inquest.  See Declaration of Todd. J. Krakower in Further Support of Plaintiff's Inquest on Damages, Dated September 15, 2014 ("Krakower Further Decl."), Ex. A.  In its discretion, the Court rejects Plaintiff's suggested time frame and abides by the applicable statute and Second Circuit case law to determine the midway point as a "reasonable intermediate date" from which to calculate interest, and the date of judgment as the logical endpoint of this calculation.  See N.Y. C.P.L.R. § 5001(b); Pavia, 2005 WL 4655383, at *8.

action in this district, see Gorey v. Manheim Serv. Corp., 10-cv-1132(JSG)(LMS), the Court finds a rate of $350 to be reasonable in this straightforward wage and hours case.  See Wong, 2010 WL 3452417 at *3.

### b)      Reasonable Hours Expended

Mr. Krakower has been working on this case since July 2011.  In addition to the time spent on the complaint, the exchange of discovery, the default motion, and this damages inquest, he has expended time on related matters including discovery disputes, settlement discussions, depositions, a summary judgment motion, the bankruptcy of individual defendants, and withdrawal of opposing counsel.[4]  The Court has reviewed the information provided by Plaintiff's counsel as to the 151.4 hours spent on this case, and finds it to be reasonable.

Therefore, I recommend an award for 151.4 hours of attorneys' time at a rate of $350 an hour, for a total of $52,990.00, plus costs of $400, for a combined cost/fee total of $53,390.00.

---

[4]      Citing attorney-client privilege, Plaintiff's counsel did not include his time sheets in his docketed inquest submission.  See Krakower Decl. ¶ 7.  By undocketed letter dated September 16, 2014, he provided his time sheets for in camera review.

### III.    Conclusion

For the foregoing reasons, I recommend that judgment be entered in Plaintiff's favor against Defendant Tri-Star as follows:  Plaintiff should be awarded $47,791.30 in damages, along with prejudgment interest of $1,188.18 up to November 19, 2014 and at a daily rate of $0.82 thereafter.  I further recommend that Plaintiff be awarded $53,390.00 in attorneys' fees and costs.

Dated:  November 19, 2014
        White Plains, N.Y.

Respectfully Submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, from the date hereof to file written objections to this Report and Recommendation.  Fed. R. Civ. P. 6(a).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Vincent L. Briccetti, United States District Judge, at the Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas St., White Plains, NY 10601-4150, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

19

Requests for extensions of time to file objections must be made to Judge Briccetti.

A copy of the foregoing Report and Recommendation has been sent to the following:

Tri-Star Transport Corp.
P.O. Box 608
Middletown, NY 10940